Kevin G. **CLEARY,** Appellant,

v.

Anthony J. **PRINCIPI,** Acting Secretary of Veterans Affairs, Appellee.

No. 91–2006.

United States Court of Veterans Appeals.

Nov. 24, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam veteran Kevin G. Cleary, appeals from an August 21, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating for his service-connected post-traumatic stress disorder (PTSD), currently rated at 50% disabling. *Kevin G. Cleary,* BVA 91–24786 (Aug. 21, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary remand, confessing error in the Board's decision, and has requested leave to file a brief in the event that the Court does not grant the remand motion. The appellant opposes the remand motion and requests the Court to reverse the Board's decision and award a 100% schedular rating or, alternatively, a 70% schedular rating and a total disability rating based on individual unemployability due to his service-

connected PTSD. The appellant, through counsel, has submitted a motion for oral argument and has requested that the Court, if it remands, retain jurisdiction to rule upon any subsequent motions for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1988). Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). The Secretary's motions will be granted in part and denied, respectively. The Court reverses the BVA decision and remands the matter for readjudication.

## I. BACKGROUND.

The veteran's service-connected PTSD has been rated 50% disabling since November 1, 1985. R. at 61–62. At the time the 50% rating was assigned, 38 C.F.R. § 4.132 (1983) provided the following criteria for rating mental disorders:

70 percent:

Ability to establish and maintain effective or favorable relationships with people is *seriously* impaired. The psychoneurotic symptoms are of such severity and persistence that there is a *pronounced* impairment in the ability to obtain or retain employment.

50 percent:

Ability to establish or maintain effective or favorable relationships with people is *substantially* impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in *severe* industrial impairment.

(Emphasis added.) The veteran was assigned a 50% rating under those criteria (R. at 82), thus reflecting a determination by the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) that his PTSD caused "severe" industrial impairment. Effective February 3, 1988, the above-quoted rating provisions of section 4.132 were amended to substitute "severely" and "severe" for "seriously" and "pronounced" in the 70% rating

and "considerably" and "considerable" for "substantially" and "severe" in the 50% rating. 38 C.F.R. § 4.132 (1991); *see generally Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

In 1987, the veteran filed a claim for an increase in his service-connected PTSD rating and submitted evidence, including a January 1988 notice of termination, due to excessive absences and sick leave, of the veteran's employment with the United States Postal Service (R. at 151), and the report of a March 1988 examination by a VA psychiatrist diagnosing the veteran's condition as "[PTSD], chronic, delayed, severe, with marked depressive features" (R. at 170–73). In a May 16, 1989, decision, the BVA denied the veteran's claim for an increased rating. R. at 183–89. The Board inexplicably applied the pre-February 1988 version of 38 C.F.R. § 4.132, which provided for a 50% rating for disabilities producing "substantial" impairment in the ability to establish or maintain effective relationships and "severe" industrial impairment, and concluded that the veteran's symptoms were "commensurate with, or accurately reflected by, the 50 percent evaluation presently in effect." R. at 187–88.

In 1989, the veteran again submitted a claim for an increased rating. In a March 22, 1989, statement, the veteran's representative asserted that the veteran was entitled to at least a 70% rating under the "liberalizing" amendments to the rating criteria in section 4.132. R. at 190. In July 1989, the veteran was given a psychiatric examination for disability evaluation by a VA psychiatrist, Dr. Edward P. Monnelly. R. at 192–97. The examiner stated: "The patient is not able to work because of the way he usually flips into rages. He cannot stand to be by people. He was in many fights when he was with the post office." R. at 197. In a January 22, 1990, statement, the veteran's treating VA psychologist, Dr. W.D. Gammon stated: "Mr. Cleary is one of about five veterans in all of the Vietnam combat veterans I've known who is 100% disabled. His ability to establish and maintain effective or favorable relationships with people is severely impaired (he even has persistent severe

problems relating to his wife). His signs and symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment." R. at 206.

In a March 14, 1990, VA examination for disability evaluation, the examining psychiatrist, Dr. Edmund N. Kudarauskas, stated the following diagnosis: "[PTSD], chronic, delayed, severe, with marked depressive features, severe. Patient is unimproved and appears unemployable." R. at 214. The examiner stated that the veteran had been unable to work since his retirement from the postal service. R. at 213. In a July 23, 1990, statement, the veteran's treating psychologist, Dr. Gammon, reiterated his judgment that the veteran was 100% disabled due to PTSD, and stated that the veteran had not been able to work since his retirement from the postal service. R. at 225. Dr. Gammon stated: "Although I understand that 'not working' by itself does not constitute grounds for unemployability, the patient's signs and symptoms which preclude work, do suggest, minimally, a severe level of impairment and this impairment is the basis of his inability to find or retain employment." R. at 225.

A marriage certificate in the record indicates that the veteran was married on July 22, 1989, and that he listed his occupation as a "painter" on that certificate. R. at 198. The veteran and his wife testified under oath at a July 26, 1990, hearing before the RO regarding the veteran's PTSD symptoms (R. at 229–38), and on December 7, 1990, the veteran testified under oath before the BVA that he had an associate's degree in liberal arts and that he had last worked in 1987, when he was terminated from the postal service. R. at 255.

In its August 1991 decision, the BVA denied an increased rating. In doing so, the Board applied the post-February 1988 version of 38 C.F.R. § 4.132 and concluded that the veteran's PTSD produced no more than "considerable" social and industrial impairment. *Cleary*, BVA 91–24786, at 6. The Board expressly rejected the opinions of Dr. Gammon and Dr. Kudarauskas that.

the veteran was totally disabled, explaining that the examiners' opinions were not controlling for purposes of the BVA's adjudication (*see* 38 C.F.R. § 4.130 (1991)), and that those opinions "appear[ ] to be based in large part upon an uncritical acceptance of all of the appellant's subjective descriptions of his current symptoms, and social and industrial status." *Cleary*, BVA 91–24786, at 5. The Board concluded that the veteran's accounts of his symptoms were not credible, citing as the basis for that determination the fact that the veteran had stated at a July 1989 VA examination that he "cannot stand to be around people" although he had been married in May 1989, and that the veteran had stated that he had last worked in 1987 for the postal service, but then on his marriage certificate had listed his occupation as a painter. *Ibid.* The Board further stated that the veteran "clarified at the December 1990 hearing that he does, in fact, occasionally work as a painter." *Id.* at 6.

## II. DISCUSSION.

### A.

■ The Board's determinations as to the veteran's levels of impairment under the applicable regulatory rating criteria are findings of fact, which this Court reviews under a "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4) (formerly § 4061); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). Pursuant to that standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [it] cannot overturn them". *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ In the present case, the Court finds no plausible basis for the denial of a 70% rating for the veteran's PTSD. Although the Board is correct that 38 C.F.R. § 4.130 establishes that an examiner's terminology will not be controlling, that section further provides that "the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency will be [controlling]." Where, as

here, *all* the medical evidence of record supports a finding that the veteran's disability is at least "severe", and thus warrants a rating no less than 70%, there is no plausible basis for the Board's contrary holding, and the Court will reverse the Board's conclusion as clearly erroneous. *See Meister v. Derwinski*, 1 Vet.App. 472, 473 (1991).

Under the pre-February 1988 rating schedule, a veteran suffering from "severe" industrial impairment, whose ability to establish and maintain effective or favorable relationships with people was "seriously" impaired, was entitled to a 50% disability rating. 38 C.F.R. § 4.132 (1983). Under the revised rating schedule, effective since February 3, 1988, a veteran suffering from "severe" industrial impairment, whose ability to establish and maintain effective or favorable relationships with people is "severely" impaired, is entitled to a 70% disability rating. 38 C.F.R. § 4.132, Diagnostic Code 9400–9411 (1991). "[A]ll things being equal, if the evidence remain[s] unchanged ... the clear intent of the 1988 change to the diagnostic code was that there be an upward revision to a 70–percent rating." *Fletcher*, 1 Vet.App. at 397; *see also Sabol v. Derwinski*, 2 Vet. App. 228, 230 (1992).

The veteran's PTSD has been consistently diagnosed as "severe". R. at 173, 206, 214, 225. Moreover, the RO in 1985 and the BVA in 1989 concluded that his PTSD caused "severe" industrial impairment. R. at 62, 187–88. The evidence of record does not indicate any improvement in his condition since those prior ratings. If anything, the recent medical evidence suggests a decline in the veteran's condition. Thus, the Court holds that there is no plausible basis for the Board's denial of at least a 70% rating for the veteran's PTSD.

### B.

■ Although there is significant evidence of record supporting the veteran's claims for a direct 100% disability rating based on the criteria for a 100% rating listed in the Diagnostic Code at 38 C.F.R. § 4.132 and for an imputed 100% rating

based on individual unemployability due to his service-connected PTSD, resolution of those claims requires further findings of fact which must be made by the Board in the first instance. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991); 38 U.S.C. § 7261(c) (formerly § 4061). Specifically, the Board must determine whether the veteran's disability meets the schedular criteria for a 100% rating listed in 38 C.F.R. § 4.132, and whether it precludes him from "securing or following a substantially gainful occupation" and thus entitles him to a 100% rating under 38 C.F.R. § 4.16(c). Therefore, remand for readjudication of those claims is the appropriate remedy at this time.

The Board's consideration of those claims shall be in accordance with the Secretary's motion for remand, which is incorporated herein by reference. The Secretary correctly points out that the Board failed to state a sufficient basis for rejecting the medical opinions of the veteran's examining VA psychiatrist and psychologist. The Board rejected those medical opinions by impugning the credibility of the veteran's accounts of his symptoms on which, the Board concluded, the examiners' evaluations were in large part based. *Cleary*, BVA 91–24786, at 5. However, as the Secretary confesses, the Board's reasons for questioning the veteran's credibility are clearly insufficient. The fact that the veteran had recently gotten married did not contradict his July 1989 statement that he "cannot stand to be around people", as the Board said it did. The criteria for a 100% rating for PTSD in 38 C.F.R. § 4.132 expressly require, inter alia, that "[t]he attitudes of all contacts *except the most intimate* are so adversely affected as to result in virtual isolation in the community." (Emphasis added.) Thus, the fact of the veteran's marriage does not preclude him from being "virtually isolated in the community". Furthermore, there is even evidence in the record that the veteran has "severe problems relating to his wife". R. at 206. Additionally, the Board's statement that the veteran "clarified at the December 1990 hearing that he does, in fact, occasionally work as a painter" (*Cleary*,

BVA 91–24786, at 6) is, as the Secretary also confesses, not at all supported by the transcript of that hearing. *See* R. at 253–57. Therefore, the Board has failed to state adequate reasons or bases for rejecting the veteran's testimony and the medical evidence from the veteran's treating VA psychiatrist and psychologist. *See Gilbert,* 1 Vet.App. at 56–57; 38 U.S.C. § 7104(d)(1) (formerly § 4004).

### III. CONCLUSION.

Upon consideration of the record, the appellant's brief, the Secretary's motion for summary remand, and the appellant's response to that motion, the Court holds that the Board committed clear error in its August 21, 1991, decision in denying a rating higher than 50% for the appellant's service-connected PTSD. The Court reverses that decision and remands the matter to the Board for prompt assignment of a 70% rating for the veteran's PTSD and readjudication, in accordance with this decision, of the appellant's claims for a direct 100% rating under the diagnostic code criteria and for an imputed 100% rating pursuant to section 4.16(c) based on total disability due to individual unemployability. The Court grants the Secretary's motion for summary remand with respect to those latter claims. A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

The Court denies the appellant's motion for oral argument because the matter is not reasonably debatable and the Court does not consider that oral argument is necessary to the disposition of this appeal. The Court denies the Secretary's motion for leave to file a brief because the Court has previously granted the Secretary one extension of time in which to file a brief, and he chose instead to file, on the date that his brief was due, a motion for summary remand. Under Rule 28(b)(2) of the Court's Rules of Practice and Procedure, if "the Secretary wishes to confess error as to any issue or issues raised by appellant, but not as to all the issues raised, and the relief the Secretary deems appropriate as to the confession of error is different from that sought by the appellant, the Secretary shall include a statement of concession in the brief and identify the relief thereunder that is deemed appropriate." *See MacWhorter v. Derwinski,* 2 Vet.App. 133, 134–36 (1992).

REVERSED AND REMANDED.