Kevin G. CLEARY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–2006.

United States Court of Veterans Appeals.

Argued Nov. 17, 1994.

Decided Oct. 5, 1995.

As Amended Oct. 11, 1995.

306

Ruth Eisenberg, Washington, DC, was on the pleadings, for appellant.

Paul J. Hutter, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and Adrienne Koerber, Deputy Assistant General Counsel, Washington, DC, were on the pleadings, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. IVERS, Judge, filed a concurring opinion. STEINBERG, Judge, filed an opinion concurring in part and dissenting in part.

HOLDAWAY, Judge:

This case is before the Court on the appellant's application for an award of attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. In the underlying case on the merits, the appellant sought an increased rating for post-traumatic stress disorder (PTSD), then rated at 50% disabling. In its August 21, 1991, decision, the Board of Veterans' Appeals (BVA or Board) denied an increased rating, and the appellant filed a timely appeal with this Court. The appellant filed his brief in April 1992, and the Secretary filed a motion for summary remand in June 1992, citing the BVA's inadequate explanation for its August 1991 decision. On November 24, 1992, the Court issued a memorandum decision reversing the BVA decision and remanding for assignment of a 70% disability rating for PTSD and adjudication of the appellant's claim for total disability due to individual unemployability. *See Cleary v. Principi*, 3 Vet.App. 495 (1992) (mem. decision). In its memorandum decision the Court used ambiguous language purporting to retain jurisdiction:

A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

*Id.* at 499.

While the appeal was pending before the Court, on September 8, 1992, the regional office awarded the appellant a 100% rating effective November 1991. On remand, the

BVA issued a September 19, 1993, decision granting an earlier effective date. The Secretary filed a copy of that BVA decision with the Court, and on October 25, 1993, the Court issued an order directing the appellant to advise the Court within 30 days whether he sought further review. The appellant informed the Court that he would not seek further review, and the Court entered judgment on November 2, 1993.

The appellant filed his EAJA fee application on December 2, 1993. He sought an award for 120.75 hours of work at a rate of $121.50 per hour, including 20 hours for representation before the Board on remand, for a total of $14,671.13. The Secretary did not contest that the appellant met the statutory requirements for entitlement to EAJA fees nor did he contest entitlement to fees for "preremand" work, but argued that the appellant could not recover attorney fees for his postremand work. At oral argument, the Court issued a bench order for the parties to brief issues regarding the Court's authority to retain jurisdiction over cases remanded to the BVA. The Secretary filed a brief on January 30, 1995, and the appellant filed a brief on May 1, 1995.

## I.

■ The appellant seeks EAJA fees, inter alia, for 20 hours of time expended by counsel representing him before the Board following the Court's November 24, 1992, remand. He relies on *Shalala v. Schaefer*, 509 U.S. 292, ―――――, 113 S.Ct. 2625, 2630–31, 125 L.Ed.2d 239 (1993), and *Stillwell v. Brown*, 6 Vet.App. 291 (1994), to support his argument that EAJA fees are available for postremand work in cases in which general jurisdiction was properly retained or cases in which such jurisdiction was improperly retained but not challenged. The appellant analogizes the Court's November 1992 remand order to a Social Security Act sentence-four remand order which was treated as a sentence-six remand order. *See* 42 U.S.C. § 405(g) (sentence four) (district court may remand a case in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision); (sentence six) (district court may remand in light of new evidence that had not

been presented during the original proceeding upon a showing of good cause). The appellant also argues that the Court has inherent authority or authority under 28 U.S.C. § 2106 to retain jurisdiction over a decision remanded to the BVA. The Secretary argues that the Court does not have the power to retain jurisdiction in such instance. The Court finds that it does not have the authority to retain general and continuing jurisdiction over a decision remanded to the BVA for a new adjudication. Postremand fees are therefore not awardable.

■ In its 1992 memorandum decision the Court plainly said that the BVA decision on remand was a new decision (as it manifestly was) and that a notice of appeal (NOA), to be filed within 120 days after notice of the BVA decision on remand was mailed, was required to appeal that decision to the Court. However, the Court purported to retain jurisdiction and gave the appellant 14 days to seek further review following the new BVA adjudication. This instruction apparently shortened the appeal period to 14 days, which clearly conflicts with the 120–day time period established earlier in the opinion. The Court's instructions regarding the 120–day NOA time period closely parallel the NOA provision established by Congress in 38 U.S.C. § 7266(a). That section provides:

> In order to obtain review by the Court of Veterans Appeals of a final decision of the Board of Veterans' Appeals, a person adversely affected by that action must file a notice of appeal with the Court. Any such notice must be filed within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a). Section 7266(a) is mandatory; an NOA must be filed within 120 days after a final BVA decision in order for jurisdiction to lie in this Court. *See Mayer v. Brown*, 37 F.3d 618, 619 (Fed.Cir.1994) ("The CVA has jurisdiction only when the appellant files a timely appeal from a final decision of the board."). The Court cannot extend the 120–day period for filing an NOA. *See Butler v. Derwinski*, 960 F.2d 139, 141 (Fed.Cir.1992); *Dudley v. Derwinski*, 2 Vet. App. 602 (1992) (en banc).

�no Rather than extending the NOA filing period, the Court apparently attempted to shorten the period to 14 days in this case. Just as the statutory language prevails when a statute and regulation conflict, *see Hamilton v. Brown*, 4 Vet.App. 528, 536 (1993), the statutory 120–day appeal period must prevail over ambiguous language of the court purporting to shorten the appeal period. *Cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988) (courts created by statute may not extend jurisdiction beyond that permitted by law). Against this framework it must be borne in mind that the jurisdiction of this Court is over final decisions of the BVA: "The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a). Nowhere has Congress given this Court either the authority or the responsibility to supervise or oversee the ongoing adjudication process which results in a BVA decision. Hence, this Court has no more jurisdiction to intervene in the adjudication of the "new" decision of the BVA than it did to intervene in the adjudication process which led to the initial decision which precipitated the initial appeal.

▮ A new decision of the BVA following a remand from this Court, although perhaps related to the previous decision, is nevertheless just that, a *new* and separate decision, one which can only be appealed if an NOA is filed within 120 days. Here, after reversing the initial BVA decision and remanding the matter to the BVA for reajudication, the Court had completed its appellate review of *that* initial decision. Legally and factually, there was nothing left to "review" of the remanded decision; there was nothing left to which our "jurisdiction to review decisions of the [BVA]" could attach. 38 U.S.C. § 7252(a). Therefore, notwithstanding its language purporting to retain jurisdiction, the Court properly could not have retained jurisdiction over the reversed BVA decision while the matter was being readjudicated. The veteran's claim was exclusively before the BVA at the time of the postremand proceedings, not this Court. "[C]oncurrent or dual plenary jurisdiction is impermissible. Once an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues." *See Cerullo v. Derwinski*, 1 Vet.App. 195, 197 (1991). Similarly, when this Court remands for a new and discrete BVA decision, it loses jurisdiction over the matter until such time, if at all, as a new BVA decision is properly appealed.

▮ Because the Court's jurisdiction ended when it remanded the BVA decision, this case is analogous to sentence four of 42 U.S.C. § 405(g) rather than sentence six. Under *Sullivan v. Finkelstein*, 496 U.S. 617, 624–25, 110 S.Ct. 2658, 2663–64, 110 L.Ed.2d 563 (1990), a remand ordered pursuant to sentence four terminates the case, which means that the postremand proceedings are not part of the "civil action" under 28 U.S.C. § 2412(d)(1)(A) for which EAJA fees are awardable. In *Travelstead v. Derwinski*, 978 F.2d 1244, 1248 (Fed.Cir.1992), the Federal Circuit held that "[although the specific holding of *Finkelstein* is limited to appeals under § 405(g) of the Social Security Act, we do not find its precedential effect so limited." The Circuit then went on to apply the "not . . . so limited" holding of *Finkelstein* to the proceedings of this Court:

> If, under the statute governing the jurisdiction and practice of the Court of Veterans Appeals, its order in this case "reversing the decision of the Secretary," and deciding "that the Secretary could not follow his own regulations" "terminated the [ ] action challenging the Secretary's final determination," then it is final and appealable under *Finkelstein*.

*Travelstead*, 978 F.2d at 1248. It is for this reason that the argument advanced by the appellant (and the dissent), i.e., that because a formal judgment was not entered until after the postremand proceedings before the BVA, the "civil action" continued and thus EAJA fees are awardable, must fail: a remand order issued by this Court was final and appealable if it terminates the action challenging the Secretary's final determination. It is true that the Court's failure to enter the requisite judgment may, as here, render timely an otherwise out-of-time EAJA application, *see Schaefer*, 509 U.S. at —— & n. 6, 113 S.Ct. at 2632 & n. 6, because the

"burden" of a court's error falls "on the party seeking to assert an untimeliness defense." *Id.* at —— n. 6, 113 S.Ct. at 2632 n. 6. That is because the EAJA's 30–day time limit runs from the end of the period of appeal, and that period does not begin until a judgment is entered in compliance with the formalities of Federal Rule of Civil Procedure 58. However, such administrative oversight, i.e., failure to enter a judgment, does not transform the nature of a remand from a sentence-four to a sentence-six remand. *Id.* Here as in *Schaefer,* the Court's 1992 "remand order was a final judgment" which terminated the civil action; there was nothing of substance left for the Court to do. *Id.* at ——, 113 S.Ct. at 2632; *see also Travelstead,* 978 F.2d at 1247–48 (remand order of this Court was final and appealable if it terminates the action challenging the Secretary's final determination).

We conclude that since the Court did not retain continuing jurisdiction, the appellant is not entitled to fees for 20 hours for his counsel's representation in the postremand proceedings.

## II.

Although the appellant is not entitled to fees for postremand work, he is entitled to fees for representation before this Court in 1991 and 1992. The appellant has submitted an itemized statement of services rendered showing that 120.75 hours were expended from 1991 through 1993. The appellant is entitled to fees for services rendered through December 1992, a total of 93.75 hours. Of the remaining 27 hours, 20 hours were spent on postremand matters (February through October 1993), for which fees are not awarded, and 7 hours were spent preparing the EAJA application in November 1993. In addition to the 7 hours for preparation of the EAJA fee application, the appellant in his Reply Brief has requested fees for 38.5 hours for litigation over the EAJA application itself ("fees for fees"), which includes 14.5 hours preparing the fee application in November and December 1993. Based on the description of services rendered, it appears that the 7 hours the appellant's counsel expended in November 1993 were included in the 14.5 hour total given in the appellant's Reply

Brief. The appellant also noted in his Reply Brief that additional sums would be submitted at the completion of these proceedings.

■ In *Cook v. Brown,* 6 Vet.App. 226, 240–41 (1994), the Court established that reasonable fees for fees are awardable as part of an EAJA award. In that case, the appellant was not successful in the underlying EAJA attorney-fee application, and the Court denied the appellant's application of fees for fees. In this case, the appellant has not prevailed on the issue of postremand fees. The Court therefore declines to award fees for litigation over the EAJA application itself on that issue. *See Commissioner, INS v. Jean,* 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990) ("Fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").

■ The Court also notes that the appellant briefed a second issue in his EAJA application and Reply Brief—entitlement to an increased hourly rate based on a cost of living adjustment (COLA). Since EAJA fees are adjustable due to a cost of living increase, *see Elcyzyn v. Brown,* 7 Vet.App. 170 (1994), the appellant is entitled to fees for representation on that issue. However, recovery of fees for postremand representation was the primary issue in this case and required further briefing due to its complexity and importance. In view of the fact that the Court has been able to grant only a portion of the EAJA relief sought by the appellant, it grants fees for one-third of the 38.5 fees for fees hours requested, or 12.75 hours. Since work subsequent to the oral argument related to the postremand fee issue, not the COLA issue, the appellant is not entitled to fees for work subsequent to November 17, 1994. However, the appellant is entitled to fees for one-third of the hours expended for work performed after the statement submitted in his Reply Brief but before November 17, 1994.

■ The appellant is entitled to $75.00 per hour plus a COLA calculated by applying the United States Department of Labor's Consumer Price Index for All Urban Consumers

(CPI–ALL) for the region or local area where the services were performed to an appropriate base, mid-point date. *See Elcyzyn,* 7 Vet.App. at 181. The mid-point date is the date upon which the appellant's principle brief was filed with the Court, in this case, April 17, 1992. *See id.* The appellant requested a fee of $121.50 per hour and attached the CPI–ALL index for the Washington, D.C. metro area to show COLA. However, following the formula specified in *Elcyzyn, supra,* the Court finds that the CPI–ALL index increased 53% between November 1981 and May 1992, which results in an hourly rate of $114.75, not $121.50.

### III.

■■ The appellant's application for EAJA fees is granted for 106.5 hours at $114.75 per hour, for a total fee award of $12,220.88. The appellant may, within 30 days of the date of this decision, file a revised accounting indicating the work performed from April 6, 1994, the date of his Reply Brief, to November 17, 1994. The appellant is entitled to fees for one-third of the hours specified in the revised accounting at $114.75 per hour. Once the appellant files and serves a revised accounting, the Secretary shall have 20 days to file objections, not inconsistent with this decision, to that accounting; if objections are not filed within 20 days, or if the Secretary indicates that he will interpose no objections, the Clerk of the Court is directed to enter an order awarding one-third of the appellant's claimed attorney fees in the revised accounting. If the Secretary files objections, a conference pursuant to Rule 33 of this Court's Rules of Practice and Procedure would be available to assist the parties in resolving any differences. *See Uttieri v. Brown,* 7 Vet.App. 415, 420 (1995).

It is so ORDERED.

IVERS, Judge, concurring:

I concur in the reasoning and the result of the Court's opinion, and I certainly agree that there was no jurisdiction here to be retained. I write separately, however, to point out that the appellant's counsel here has potentially placed in question this Court's jurisdiction by permitting a parallel action to progress below during the pendency of the appeal without advising the Court of the existence of that action. Not only that, but the appellant and his counsel have potentially placed in jeopardy their ability to recover attorney fees in this Court.

The Court issued a memorandum decision in the appeal on November 24, 1992, *Cleary v. Principi,* 3 Vet.App. 495 (1992) (mem. dec.), unaware of any VA actions subsequent to the BVA decision then on appeal. In its November 1992 decision, the Court reversed the underlying BVA decision and remanded to the Board for the assignment of a 70% rating for the appellant's service-connected post-traumatic stress disorder (PTSD) and for the readjudication of entitlement to either a 100% schedular rating for PTSD or a total disability rating based on individual unemployability. *Id.* at 498–99. However, during the pendency of the appeal before the Court, on September 8, 1992, the regional office (RO) notified the appellant that it had awarded him a 100% schedular rating for his service-connected PTSD, with an effective date of November 21, 1991.

Even though the proceedings at the RO level which awarded a 100% schedular disability rating for PTSD could be viewed as a new, separate claim, *see Proscelle v. Derwinski,* 2 Vet.App. 629, 631 (1992) (since claim for an increase is predicated on increase in severity subsequent to prior claim, it is original claim and not subject to requirements for reopening claims under 38 U.S.C. § 5108); *see also Suttmann v. Brown,* 5 Vet.App. 127, 136 (1993) (noting that claim for an increase is "based upon facts different from the prior final claim" because claim for increase could be predicated on finding of increase since prior claim), the RO's determination of an increased disability rating had a direct bearing on whether the appellant should have continued to prosecute his appeal before this Court. Indeed, as noted by the Secretary in his response to the appellant's application for attorney fees, the RO's September 1992 award of a total disability rating was predicated on a 1991 VA examination that was not "materially different from a March 1990 psychiatric examination conducted pursuant to the December 1989 claim," i.e., the claim that

initiated the adjudication process leading to the Court's November 1992 decision. Secretary's Response at 4. Thus, although the proceedings resulting in the RO's September 1992 award were a separate claim for purposes of this separate opinion, they arose from a virtually identical fact situation and resulted in an award of a 100% schedular disability rating and, ultimately, an earlier effective date. The quandary this set of parallel proceedings places the Court in could result in a nullification either of the action below or of the Court's action. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) (noting that Supreme Court's established practice was to vacate judgment below and remand with direction to dismiss where civil case appealed from federal court below "has become moot while on its way here or pending our decision on the merits"); *Kaplan v. Brown,* 7 Vet.App. 425, 428–29 (1995) (per curiam) (Court dismissed motion seeking injunctive relief where issue was moot); *Landicho v. Brown,* 7 Vet.App. 42, 54 (1994); *Mokal v. Derwinski,* 1 Vet.App. 12, 15 (1990) (Court dismissed portion of petition seeking mandamus relief since controversy surrounding petition was moot); *see also Aguirre v. S.S. Sohio Intrepid,* 801 F.2d 1185, 1189 (9th Cir.1986) (mootness is element of justiciability and raises question as to court's jurisdiction); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir.1985) (court is obligated to review its jurisdiction over an appeal at any point in appellate process); *Aronson v. Brown,* 7 Vet. App. 153, 155 (1994) (Court has adopted case or controversy jurisdictional requirements imposed by Article III of the United States Constitution; under Article III, a court has independent duty to examine its jurisdiction).

While I concur in the result reached here, I do so without a great deal of enthusiasm because I feel that the failure of the appellant and his counsel to inform the Court of the action below has caused the Court to unnecessarily expend judicial resources and quite possibly could have affected the appellant's ability to recover any attorney fees whatsoever. *See* 28 U.S.C. § 2412(d)(1)(A) (party is not eligible for award of fees and expenses under Equal Access to Justice Act if court determines that "special circum-

stances make an award unjust"); H.R.REP. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990 ("special circumstances" include "equitable considerations [that] dictate an award should not be made"); *Doria v. Brown,* 8 Vet.App. 157, 161–63 (1995); *see also Brinker v. Guiffrida,* 798 F.2d 661, 667 (3d Cir. 1986) (equitable considerations have been interpreted to include "a prevailing party's unclean hands"). Although the Secretary bears some responsibility for informing the Court of developments that may affect the jurisdiction of the Court, the appellant and his counsel bear the lion's share of the responsibility for keeping the Court and VA advised under the facts in this case.

STEINBERG, Judge, concurring in part and dissenting in part:

I concur in the majority's decision to the extent that the appellant's application under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) is granted. I dissent from the majority's holding that the Court did not have the power to retain jurisdiction in its November 1992 memorandum decision in the underlying appeal, and I would award EAJA fees for the postremand representation before the Board of Veterans' Appeals (BVA or Board).

The majority's holding is wrong because it does not explain (nor could it) how jurisdiction returned to the BVA from this Court at the time of its memorandum decision even though the Court never entered judgment until *after* postremand proceedings were complete. As the following analysis in part I demonstrates, entry (or, in this case, nonentry) of judgment is not just a formality that may be overlooked at the convenience of the Court. Because I believe that the Court did retain jurisdiction over the underlying appeal, I reach the issue of the Court's power to retain jurisdiction, and conclude in part II.C. that the Court does have such power. Finally, I conclude in part II.D. that the appellant was entitled to postremand fees under either of his alternative theories.

## I. Retention of Jurisdiction in *Cleary*

The appellant seeks EAJA fees for time expended by counsel representing him before

the BVA following the Court's November 1992 remand. The Secretary argues that the Court could not, in fact, have retained general jurisdiction in the instant case, and thus had no jurisdiction over the postremand proceedings. The majority agrees with the Secretary. I do not.

The Court's November 24, 1992, memorandum decision contained the following language:

A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new [NOA] with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

*Cleary v. Principi,* 3 Vet.App. 495, 499 (1992 (mem. dec.)). The language of the memorandum decision is not without ambiguity; however, based on the following analysis of the totality of the circumstances, it is clear that general jurisdiction was retained by the Court.

In *United States v. Indrelunas,* 411 U.S. 216, 220, 222, 93 S.Ct. 1562, 1564, 1565, 36 L.Ed.2d 202 (1973), the Supreme Court held that Rule 58 of the Federal Rules of Civil Procedure (FRCP) (which requires that "[e]very judgment shall be set forth on a separate document") must be "mechanically applied" because the intent of the Advisory Committee for the FRCP was clearly to "eliminate ... uncertainties" as to "what actions of the District Court would constitute an entry of judgment" and thus avoid "occasional grief to litigants as a result of this uncertainty." In *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (cited in *Shalala v. Schaefer,* 509 U.S. 292, ——, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993)), the Supreme Court allowed a narrow exception to *Indrelunas* in circumstances where a separate document of

judgment was never entered by the district court, one party appealed to the court of appeals, and the other party did not object to the appeal. In holding that the parties to a lawsuit can waive FRCP Rule 58's requirement that a judgment is "effective" only when set forth in a "separate document", the Supreme Court reasoned:

Here, *the District Court clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case.* A judgment of dismissal was recorded in the clerk's docket. And petitioner did not object to the taking of the appeal in the absence of a separate judgment. Under these circumstances, the parties should be deemed to have waived the separate-judgment requirement of Rule 58 and the Court of Appeals properly assumed appellate jurisdiction under [28 U.S.C.] § 1291.

*Bankers Trust,* 435 U.S. at 387–88, 98 S.Ct. at 1121 (emphasis added). The Supreme Court quoted the FRCP Advisory Committee to the effect that the "sole purpose of the separate-document requirement" in FRCP Rule 58 was to "clarify when the time for appeal ... begins to run". *Id.* at 384–85, 98 S.Ct. at 1119–20.

In this Court, Rule 36 is the functional equivalent of FRCP Rule 58. Rule 36 specifically advises the following as to when a decision of this Court becomes appealable: "Entry of the judgment begins the 60-day time period for any appeal to the United States Court of Appeals for the Federal Circuit" (Federal Circuit). U.S.Vet.App.R. 36. *Indrelunas* and *Bankers Trust* stand for the proposition that a rule as to finality of judgment should be applied "mechanically" except in the narrow circumstances where the court has clearly indicated its intent to enter a final decision, such as by recording a judgment in the court's docket, or the parties have waived or implicitly waived the finality rule. The instant case does not meet either of the *Bankers Trust* requirements for finding an exception. Despite some ambiguous language contained in the *Cleary* memorandum decision, the following facts demonstrate clearly that the Court retained general juris-

diction: (1) Judgment was not entered until after the postremand proceedings; (2) until entry of judgment on November 2, 1993, the Court never showed any intent or took any action to terminate its jurisdiction (for example, the Court, noting that it had retained jurisdiction, expressly ordered the appellant on October 25, 1993, to advise the Court, within 14 days, whether he sought further review in the Court after the 1989 effective date for his 100% rating had been awarded on remand); and (3) the parties at all times acted as though jurisdiction had been retained. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir.1995) (where district court did not enter judgment and neither party objected, jurisdiction was retained in the district court).

In light of all these facts and applying the Supreme Court's analysis in *Bankers Trust*, the Court should hold that the instant case did not become appealable to the Federal Circuit until the postremand entry of judgment by the Court pursuant to Court Rule 36. Because the case did not become appealable until the time of the postremand entry of judgment, jurisdiction remained with this Court. *See Cerullo v. Derwinski*, 1 Vet.App. 195, 197 (1991) ("plenary jurisdiction can lie in only one body" and jurisdiction "is not something that 'can float in the air' to be seized by any tribunal at any time") (quoting *Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir.1981), *cert. denied*, 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982)). That jurisdiction remained here did not, as the majority seems to believe, *ante* at 308, preclude the BVA from making a new decision pursuant to the remand as long as it acted pursuant to the remand, any more than a district court's remand with jurisdiction retained under sentence six of 42 U.S.C. § 405(g) precludes the Social Security Administration from making a "new decision" [1] on a case so remanded to it. *See Melkonyan*

*v. Sullivan*, 501 U.S. 89, 101–02, 111 S.Ct. 2157, 2164–65, 115 L.Ed.2d 78 (1991) (in section 405(g) sentence-six cases, "the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs").[2]

The majority admits that the "EAJA's 30–day time limit runs from the end of the period of appeal, and that that period *does not begin* until a judgment is entered in compliance with the formalities of [FRCP] 58." *Ante* at 309 (emphasis added) (citing *Schaefer*, 509 U.S. at —— n. 6, 113 S.Ct. at 2632 n. 6). The majority correctly concludes that the nonentry of judgment means that the appeal period did not begin to run upon remand. However, the majority fails to draw from this conclusion the further logical conclusion that jurisdiction remained with the Court because the appeal period did not begin until judgment was entered. Apparently, the majority's holding is that the case ended at the time of the memorandum decision, but that the appellant did not then have the right to appeal that decision to the Federal Circuit.

The majority seems to be driven to this logical absurdity by its incorrect conclusion that the Court's instruction that the appellant, within 14 days after the postremand BVA decision, notify the Clerk whether he sought further review "conflict[ed] with" 38 U.S.C. § 7266(a) because it "shortened the [120–day] appeal period to 14 days". *Ante* at 307. To the contrary, the Court's instruction did not shorten the appeal period for the September 1993 BVA decision. If the appellant had not advised the Court, within 14 days (or an extended period routinely provided by the Court when it has not received notice from such an appellant within 14 days), of his desire to seek review of the September 1993 BVA decision and the Court had then dismissed the appeal and entered judgment as to the claim over which jurisdic-

---

1. *Curtis v. Shalala*, 12 F.3d 97, 100 (7th Cir. 1993) (after "post-remand proceedings are completed ...[,] the Secretary returns to Court with a new decision" under sentence six of 42 U.S.C. § 405(g)).

2. The same reasoning fully rebuts the majority's following tautology: "[A]fter reversing the initial

[Board of Veterans' Appeals (BVA or Board)] decision and remanding the matter to the BVA for readjudication, the Court had completed its appellate review of *that* initial decision. Legally and factually, there was nothing left to 'review' of the remanded decision; there was nothing left to which our 'jurisdiction to review decisions of the [BVA]' could attach." *Ante* at 308.

tion had been retained, the appellant could still have filed an NOA as to the September 1993 BVA decision until the section 7266(a) 120–day period expired. The effect of entry of judgment is merely to terminate the Court's jurisdiction over the "civil action", *see* part II., below. A timely NOA filed as to the September 1993 BVA decision would undeniably have given the Court jurisdiction over it. It would not, however, have renewed the Court's jurisdiction over the entire civil action—which is the nature of the jurisdiction in a case where, as here, jurisdiction was retained over the appeal during the remand proceedings at the Department of Veterans Affairs.

## II. "Civil Action" Pursuant to Section 2412(d)

Under 28 U.S.C. § 2412(d)(1)(A), EAJA fees and expenses are recoverable in "any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action". The term "civil action" is not defined in the EAJA. In support of an award of postremand fees, the appellant argues that the BVA proceedings on remand formed part of the "civil action" brought in this Court pursuant to the EAJA. (He also argues, in the alternative, that if the Court finds against him on the first theory, nevertheless under *Schaefer, supra,* and *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), EAJA fees may be recovered for postremand representation when a court erroneously retains jurisdiction over a case where judgment should have been entered. That alternative argument is dealt with in part II.D.2., below.) The Secretary argues, in his March 4, 1994, response to the EAJA application, that EAJA fees cannot be awarded for postremand representation before the Board because BVA adjudication on remand is neither an adversary adjudication under 28 U.S.C. § 2412(d)(3) and 5 U.S.C. § 504 nor a part of one civil action for EAJA purposes. Response at 6–16. The appellant, in his April 6, 1994, reply, does not contest the Secretary's argument that adjudication on remand before the BVA is not an adversary adjudication pursuant to 28 U.S.C. § 2412(d)(3) and 5 U.S.C. § 504, but does contest the Secretary's definition of "civil action". Reply at 3, n. 1. As noted, the

majority incorrectly concludes that the "civil action" in the instant case ended with the Court's November 1992 remand to the BVA. *Ante* at 308.

### A. "Civil Action" in Social Security Act Cases

There is considerable federal caselaw, including a series of Supreme Court cases, on the EAJA issues of definition of a civil action, prevailing-party status, and final judgment. Much of this caselaw has arisen in connection with district-court remands to the Department of Health and Human Services (HHS) under the Social Security Act (SSA) and implementing regulations prescribed thereunder. The statutory provision establishing the availability of judicial review of Social Security benefits decisions by the HHS Secretary is 42 U.S.C. § 405. Sentence four of 42 U.S.C. § 405(g) provides that district courts may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Sentence six provides that a case may be remanded on motion of the Secretary for good cause before the Secretary has filed an answer, or the district court may remand to HHS for additional evidence to be taken, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding". As to a sentence-six remand, section 405(g) provides that the Secretary "shall file with the court any ... additional and modified findings of fact and decision". Sentence eight provides that the "judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions". *See generally Schaefer, supra,* and *Stillwell v. Brown,* 6 Vet.App. 291, 300 (1994).

In 1989, the Supreme Court held in *Hudson, supra,* that EAJA fees were awardable for a postremand adjudication in an SSA case where the court had retained jurisdiction:

Our past decisions interpreting other fee-shifting provisions make clear that where

**315**

administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded.

*Hudson,* 490 U.S. at 888, 109 S.Ct. at 2256.

In 1990, the Supreme Court called the *Hudson* holding into question in a non-EAJA SSA case where it held that a sentence-four remand was a final order that marked the end of the "civil action" for purposes of section 405(g). The Supreme Court stated:

> The use of the term "a civil action" [in the first sentence of § 405(g) ] suggests that at least in the context of § 405(g), each final decision of the Secretary will be reviewable by a separate piece of litigation. The fourth and eighth sentences of § 405(g) buttress this conclusion. The fourth sentence states that in such a civil action, the district court shall have the power to enter "a *judgment* affirming, modifying, or reversing the decision of the Secretary, *with or without remanding the cause for a rehearing.*" (Emphasis added.).... [S]hould the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt ... whether he could appeal his own order. Thus it is that the eighth sentence of § 405(g) provides that "[t]he judgment of the court *shall be final* except that it shall be subject to review in the same manner as a judgment in other civil actions." (Emphasis added.)

*Sullivan v. Finkelstein,* 496 U.S. 617, 624–25, 110 S.Ct. 2658, 2663–64, 110 L.Ed.2d 563 (1990) (footnote omitted).

In 1991, the Supreme Court extended the *Finkelstein* holding to EAJA cases. The Court stated, in indicating that postremand attorney fees would be available in Social Security benefits cases only in sentence-six remands:

> In sentence four cases, the filing period begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run, so

3. *Flores v. Shalala,* 49 F.3d 562, 568 (9th Cir.

that the judgment is no longer appealable. In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs.

*Melkonyan, supra* (citation omitted).

The decisions in *Hudson* and *Melkonyan* created a quandary for courts adjudicating EAJA applications in SSA cases, because *Hudson* had held that when a remand to HHS "does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status ... until after the result of the administrative proceedings is known" (490 U.S. at 886, 109 S.Ct. at 2255), whereas *Melkonyan* had held that sentence-four remands were appealable judgments for EAJA purposes (501 U.S. at 102, 111 S.Ct. at 2165). Thus, under *Melkonyan,* the recipient of a sentence-four remand had to file an EAJA application within 30 days after the period to appeal the remand judgment had run, but at that point the appellant would often not yet have achieved prevailing party status under *Hudson.*

In *Schaefer, supra,* the Supreme Court sought to resolve the "confusion" [3] created by *Hudson* and *Melkonyan.* The appellant in *Schaefer* argued that because the district court had retained jurisdiction over his sentence-four remand to HHS and had not entered judgment, the remand was not an appealable decision under *Melkonyan.* The Supreme Court held:

> That argument ... is inconsistent with the plain language of sentence four, which authorizes a district court to enter a judgment "with or without" a remand order, not a remand order "with or without" a judgment. Immediate entry of judgment (as opposed to entry of judgment after postremand agency proceedings have been completed and their results filed with the court) is in fact the principal feature that distinguishes a sentence-four remand from a sentence-six remand.

*Schaefer,* 509 U.S. at ——, 113 S.Ct. at 2629 (citation omitted). The Supreme Court con-

1995).

cluded that *Hudson* was not controlling because it was limited to sentence-six remands (or to sentence-four remands where jurisdiction was improperly entered but not challenged). The Court stated:

> We have ... made clear, in *Finkelstein*, that that retention of jurisdiction [in a sentence-four remand], that failure to terminate the case, was error.... We therefore do not consider the holding of *Hudson* binding as to sentence-four remands that are ordered (as they should be) without retention of jurisdiction, or that are ordered with retention of jurisdiction that is challenged.

*Schaefer,* 509 U.S. at ——, 113 S.Ct. at 2630; *see also Curtis v. Shalala,* 12 F.3d 97, 100 (7th Cir.1993) (stating, in post-*Schaefer* case, that "district court necessarily retains jurisdiction of [a sentence-six remand] while the post-remand administrative proceedings are pending" and "[s]entence-six cases do not contemplate entry of a final judgment until after the post-remand proceedings are completed and the Secretary returns to court with a new decision"; thus, "post-remand [administrative] proceedings may still be considered part and parcel of the 'civil action' before the court").

The Supreme Court's holdings in the line of section 405(g) cases from *Hudson* to *Schaefer* make clear that the civil action ends in a sentence-four case when judgment is entered remanding the case, and that the civil action ends in a sentence-six case when the postremand judgment is entered.

### B. Analogy Between 42 U.S.C. § 405(g) and This Court's Jurisdictional Statutory Provisions

The majority opinion takes the position that "this case is analogous to sentence four of 42 U.S.C. § 405(g) rather than sentence six." *Ante* at 308 (citing *Finkelstein,* 496 U.S. at 624–25, 110 S.Ct. at 2663–64, and *Travelstead v. Derwinski,* 978 F.2d 1244, 1247–48 (Fed.Cir.1992)). I disagree for the following reasons. As noted in part II.A., above, the current state of SSA law as to remands pursuant to 42 U.S.C. § 405(g) is

that judgment in a sentence-four remand must be entered and that that judgment terminates the "civil action" for EAJA purposes. In a sentence-six remand where jurisdiction is retained, however, the "civil action" does not terminate until a postremand judgment is entered. *See Schaefer,* 509 U.S. at ——, 113 S.Ct. at 2629 (quoting *Melkonyan, supra*). The Supreme Court, in *Schaefer,* relied on the "plain language of sentence four" in reaching its result (*ibid.*), and in *Finkelstein* the Court had referred to the "context of § 405(g)" in holding that a sentence-four remand was a final, appealable judgment and that jurisdiction could not be retained in a sentence-four remand (496 U.S. at 625, 110 S.Ct. at 2663). Therefore, under the analysis in *Schaefer,* if this Court has a jurisdictional statute that requires entry of judgment in all remanded cases (as 42 U.S.C. § 405(g) does in all sentence-four cases), the Court would be required in every case to enter judgment at the time a case is remanded (following the expiration of the period allowed for the filing of a motion for reconsideration, *see* U.S.Vet.App.R. 35(d)), and the "civil action" for EAJA purposes would terminate upon that entry of judgment.

For the reasons that follow, the Court should hold that its jurisdictional statutory provisions do not require the Court to enter judgment in every remanded case.

*1. This Court's jurisdictional statutory provisions.* The statutory provisions governing this Court's jurisdiction and the finality of its decisions are found in 38 U.S.C. §§ 7252(a) and 7267(a) and (b).[4] These provisions state:

> (a) The [Court] shall have exclusive jurisdiction to review decisions of the [BVA]. The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board *or to remand the matter, as appropriate.*

38 U.S.C. § 7252(a) (emphasis added).

> (a) A decision upon a proceeding before the [Court] shall be made as quickly as practicable. In a case heard by a panel of

---

**4.** *See Matter of Wick,* 40 F.3d 367, 370 (Fed.Cir. 1994); *Mayer v. Brown,* 37 F.3d 618, 619 (Fed. Cir.1994); *Travelstead v. Derwinski,* 978 F.2d 1244, 1248 (Fed.Cir.1992).

the Court, the decision shall be made by a majority vote of the panel in accordance with the rules of the Court. The decision of the judge or panel hearing the case so made shall be the decision of the Court.

(b) A judge or panel shall make a determination upon any proceeding before the Court, and any motion in connection with such a proceeding, that is assigned to the judge or panel. *The judge or panel shall make a report of any such determination which constitutes the judge or panel's final disposition of the proceeding.*

38 U.S.C. § 7267(a), (b) (emphasis added).

As can be seen from the above provisions, there is nothing in the statutory provisions governing the jurisdiction of this Court that is directly analogous to the 42 U.S.C. § 405(g) sentence-four requirement that a judgment must be entered in every case where a remand order is issued. In *Stillwell*, 6 Vet.App. at 299–300, the Court held that the reasoning of *Schaefer* applied to cases in this Court where judgment is entered immediately following a remand decision and thus further held that prevailing-party status is achieved at the time when a case is remanded with ensuing entry of judgment. The Court pointed out that "there is no statutory provision specifically addressing when a judgment [of this Court] is to issue". *Id.* at 297. The *Stillwell* opinion made clear that its holding applied to "any remand by this Court where judgment is entered" because such a remand "is directly analogous to a remand under sentence four of 42 U.S.C. § 405(g)." *Stillwell*, 6 Vet.App. at 300.

It is notable that in *Stillwell* general jurisdiction over the remand was *not* retained, and that the Court took some pains to state that it was *not* dealing with EAJA fees where judgment was not entered and the Court had retained jurisdiction over a remand it had ordered. *Ibid.*

Not only do the Court's jurisdictional statutory provisions not require that every action by the Court be followed by entry of judgment, but they imply otherwise. First, section 7252(a) affords the Court broad authority to "remand the matter, as appropriate" and is silent as to the entry of judgment. Second, section 7267(b) of title 38 requires the Court "to make a determination upon any proceeding ... and any motion in connection" therewith and then to make a report of any such determination (which, obviously, includes interim matters and final as well as nonfinal determinations) *only* when it "constitutes the ... final disposition of the proceeding". The term "final disposition of the proceeding" implies that there are dispositions (that is, actions on other than procedural issues) which contemplate merits dispositions that are not yet final, that is, merits dispositions where the Court retains jurisdiction over the appeal.

Moreover, the legislative history of the Federal Courts Administration Act (FCAA)[5] and the caselaw of the Federal Circuit interpreting the FCAA show a clear contemplation of this Court's remanding a case and retaining jurisdiction over it. The Senate Judiciary Committee report on the FCAA stated: "The Committee intends to make clear that EAJA applies to [this Court] to the full extent of the law, including the principles contained in *Sullivan v. Hudson* and *Center for Science in the Public Interest v. Regan*". S.REP. No. 342, 102d Cong., 2d Sess. 39–40 (1992). In its opinion in *Jones (McArthur) v. Brown*, 41 F.3d 634, 637 (Fed.Cir.1994), the Federal Circuit noted this very FCAA legislative-history reference to *Regan* and *Hudson*. The Federal Circuit there held, in reversing this Court,[6] that Congress had intended the EAJA to be applicable to cases pending on the date of the FCAA's enactment either on the merits or merely on an EAJA application; this had been the express holding of the District of Columbia Circuit in the *Regan* case also cited in that Committee report.[7]

---

**5.** Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992) (making the EAJA applicable to this Court).

**6.** *See Jones (McArthur) v. Brown*, 6 Vet.App. 101 (1993). *But see id.* at 110 (Steinberg, J., dissenting).

**7.** *See Center for Science in the Public Interest v. Regan*, 802 F.2d 518, 524 (D.C.Cir.1986).

The same portion of the FCAA history that the Federal Circuit found persuasive in *Jones* made an analogy between the EAJA's application to this Court and the principles of *Hudson.* One of the major principles of *Hudson* was that postremand fees are awardable in certain cases where jurisdiction is retained by the remanding court, and in *Schaefer* the Supreme Court has recently confirmed that *Hudson* remains good law as to non-sentence-four remands.

The majority states that "this Court has no more jurisdiction to intervene in the adjudication of the 'new' decision of the BVA than it did to intervene in the adjudication process which led to the initial decision which precipitated the initial appeal". *Ante* at 308. This narrow reading of the Court's jurisdictional statutes would cast doubt on this Court's authority to exercise jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). This is a jurisdiction which this Court has previously held it possesses even in the absence of a final BVA decision where action is needed in aid of the Court's jurisdiction. *See Moore (Robert) v. Derwinski,* 1 Vet.App. 83, 84–85 (1990); *Erspamer v. Derwinski,* 1 Vet.App. 3, 7 (1990).

**2. Federal Circuit precedent.** The majority places great, but misplaced, reliance on *Travelstead, supra. Ante* at 308. However, the *holding* of the Federal Circuit in *Travelstead* was only that this Court's opinion reversing and remanding to the BVA under the circumstances present there was a final, appealable decision. The Federal Circuit did not address the question confronting the Court in the instant case. First, jurisdiction was not retained in *Travelstead.*

Second, this Court in *Travelstead* had *reversed* a Board decision on the basis that it had misconstrued the law regarding determinations of creditworthiness for purposes of granting a retroactive release of liability on a home-loan-guaranty default.[8] The Federal Circuit there noted that the Court's reversal decision had "found the procedure applied by the VA . . . to be contrary to the express language of the statute" and stressed that if the reversal decision were not appealable the legal question involved would be "effectively

unreviewable". *Id.* at 1246, 1249. That is certainly not the situation in the instant case, because the remand here was due to an inadequate statement by the BVA of the reasons or bases for its decision, and did not invalidate any law, regulation, or practice of the Secretary. Indeed, no issue can be made "effectively unreviewable" by a remand where jurisdiction has been retained and no judgment entered. For example, if the Court *had* retained jurisdiction in *Travelstead* and the Secretary had awarded benefits based on the Court's interpretation of the law regarding retroactive release of home-loan-guaranty liability, the Secretary could have appealed the legal question involved to the Federal Circuit after this Court would have entered judgment following completion of the remand proceedings and any further proceedings in this Court. The majority states that the Federal Circuit in *Travelstead* "held" that *Finkelstein, supra* (which dealt with the finality of a sentence-four remand for purposes of its appealability) was not limited to the context of 42 U.S.C. § 405(g) and "appl[ied] the . . . holding of *Finkelstein* to the proceedings of this Court". *Ante* at 308. In fact, *Travelstead,* in noting that the legal question decided by this Court would be "effectively unreviewable" absent immediate appealability, expressly cited *Finkelstein* for the proposition that "remands are not all of the same nature". *Travelstead,* 978 F.2d at 1249. Because the remand in question in this case did not preclude an ultimate appeal, the majority's reliance on *Travelstead* and *Finkelstein* is misguided.

## C. Court's Authority to Retain Jurisdiction

In response to the November 17, 1994, bench order, the Secretary argues that the Court did not have the power to retain jurisdiction in the instant case because the Court does not have the power to retain jurisdiction in *any* case. The majority opinion agrees with the Secretary and holds, erroneously in my judgment, that the Court did not have the authority to retain jurisdiction over this case.

8. *See Travelstead v. Derwinski,* 1 Vet.App. 344, 348 (1991), *aff'd,* 978 F.2d 1244 (Fed.Cir.1992).

*1. Authority under section 7252(a).* According to the Supreme Court, courts retain jurisdiction "to assure that [the court's] prior mandate is effectuated" and "to determine if its legal instructions on remand have been followed". *Hudson*, 490 U.S. at 886, 888, 109 S.Ct. at 2255, 2256 (citing *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 306–07, 83 L.Ed. 221 (1939)). The Secretary argues that this Court, as an Article I court, has only the jurisdiction expressly conferred upon it by statute, and that the Court has no express statutory grant of authority to retain jurisdiction. Brief (Br.) at 17–18. Despite the position he takes in this case, the Secretary has previously joined in at least three pending cases in motions to remand where the motion requested that the Court retain jurisdiction and where the motion was granted and jurisdiction was thus retained.[9] The Court has retained general jurisdiction from time to time in precedential actions.[10] It has also done so in numerous nonprecedential actions.[11]

It is a well-settled rule of law that where a court has interpreted a statute and the legislature has not subsequently spoken, the court should not lightly overturn its interpretation.[12] Congress has given no indication that it wishes to amend this Court's jurisdictional statutory provisions in response to the Court's precedential actions retaining jurisdiction.[13] Therefore, the Court should not lightly overrule its precedential actions retaining jurisdiction over cases remanded to the BVA. Indeed, because the en banc Court unanimously retained jurisdiction in *Russell v. Principi*, 3 Vet.App. 310, 320 (1992) (en banc), a contrary holding should be issued only by the en banc Court. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992).

The Secretary cites *Matter of Wick*, 40 F.3d 367, 370 (Fed.Cir.1994), and *Mayer v. Brown*, 37 F.3d 618, 619 (Fed.Cir.1994), for the proposition that the statutory jurisdictional provisions applicable to this Court do not allow the Court to retain jurisdiction. However, neither *Wick* nor *Mayer* supports the Secretary's assertion. In both cases, the Federal Circuit held that this Court, pursuant to 38 U.S.C. § 7252, has jurisdiction to review only decisions of the Board itself. *See Wick*, 40 F.3d at 371; *Mayer*, 37 F.3d at 619. In the instant case, the Court unquestionably is reviewing a decision of the Board. Thus, the holdings of *Wick* and *Mayer* are inapposite. As noted in part II.B.1., above, the Court has broad authority pursuant to 38 U.S.C. § 7252(a) to remand a matter "as appropriate". In light of this statutory authority, the Court's previous exercise of that

9. *Shedrick v. Brown*, No. 92–231 (Dec. 22, 1992) (mot. granted Dec. 4, 1992); *Lynch v. Brown*, No. 91–1795 (Feb. 18, 1993) (mot. granted Mar. 4, 1993); *Ramsey v. Brown*, No. 91–1658 (Dec. 27, 1993) (mot. granted Dec. 14, 1993); *Street v. Brown*, No. 91–215 (Mar. 12, 1992) (mot. granted Jan. 31, 1992).

10. *See, e.g., Lasovick v. Brown*, 6 Vet.App. 141, 152 (1994); *Saunders v. Brown*, 4 Vet.App. 320, 327 (1993); *Hood v. Brown*, 4 Vet.App. 301, 304 (1993); *Mata v. Principi*, 3 Vet.App. 558 (1992) (per curiam order); *Russell v. Principi*, 3 Vet. App. 310, 320 (1992) (en banc); *Masors v. Derwinski*, 2 Vet.App. 181, 189 (1992); *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 218 (1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 59 (1990) (Court remanded and retained jurisdiction, directing that, upon completion of remand proceeding, Secretary supplement record on appeal to include further action of Board); *cf. Friscia v. Brown*, 7 Vet.App. 294, 297 (1994) (ordering Secretary to file status report within 10 days after date of opinion).

11. *See, e.g., supra* note 9.

12. *See, e.g., Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736, 97 S.Ct. 2061, 2070, 52 L.Ed.2d 707 (1977) ("considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation"); *Flood v. Kuhn*, 407 U.S. 258, 282, 284, 92 S.Ct. 2099, 2111, 2112–13, 32 L.Ed.2d 728 (1972) (refusing to overrule previous cases that had established an admittedly "anomal[ous]" antitrust exemption for professional baseball because: "If there is any inconsistency or illogic in all this, it is an inconsistency and illogic of long standing that is to be remedied by the Congress and not by this Court").

13. Indeed, as noted in part II.B.1., above, the legislative history of the FCAA affirmatively shows a congressional contemplation of this Court's retaining jurisdiction over an appeal remanded to the BVA in a manner analogous to the remand/retention of jurisdiction involved in *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248,

statutory authority in precedential actions, and the fact that Congress has not acted to change that statutory authority (but, indeed, has even indicated its contemplation of Court remands with retention of jurisdiction),[14] the Court should reaffirm that its authority under section 7252(a) "to remand ... as appropriate" authorizes it to retain general jurisdiction over a case remanded to the BVA.

In addition, as discussed in parts II.C.2. and 3., below, the Court also has the authority to retain general jurisdiction over remands to the BVA under a general jurisdictional statute, 28 U.S.C. § 2106, as well as pursuant to the inherent powers of the Court. *Cf. Jones (Joseph) v. Derwinski*, 1 Vet.App. 596, 606 (1991) (holding that this Court has inherent as well as express statutory authority "to punish for contempt").

**2. Authority pursuant to 28 U.S.C. § 2106.** Congress has conferred on federal appellate courts the following express statutory authority:

> The Supreme Court or *any other court of appellate jurisdiction may* affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and *direct the entry of such appropriate judgment, decree, or or-*

*der, or require such further proceedings to be had as may be just under the circumstances.*

28 U.S.C. § 2106 (emphasis added). Section 2106 has been construed by federal courts as including the authority to retain jurisdiction over a remanded case.[15]

There can be no doubt that the Court of Veterans *Appeals* is an appellate tribunal and that 28 U.S.C. § 2106 is not on its face written as applicable only to Article III appellate courts.[16] This body has been denominated as a "court" throughout chapter 72 of title 38, U.S.Code, and has been granted the basic powers of a judicial tribunal.[17] Moreover, chapter 72 of title 38 is replete with references to this Court as exercising appellate jurisdiction, deciding appeals, reviewing BVA decisions on the record before the VA, not holding de novo trials, and so forth.[18] Significantly, the Supreme Court has held expressly that Article I courts "exercise the judicial power of the United States" and are not executive agencies. *Freytag v. Commissioner*, 501 U.S. 868, 889, 111 S.Ct. 2631, 2644, 115 L.Ed.2d 764 (1991). Hence, the "plain meaning"[19] of the phrase "court of appellate jurisdiction" in 28 U.S.C. § 2106 includes this Court.

---

104 L.Ed.2d 941 (1989), under the Social Security Act, 42 U.S.C. § 405(g).

**14.** *See supra* note 13.

**15.** *See Super X Drugs Corp. v. FDIC*, 862 F.2d 1252, 1256 (6th Cir.1988) (remand "is pursuant to 28 U.S.C. § 2106, and we will retain jurisdiction over the pending appeal"); *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1019 (2d Cir.1975) ("we shall use our power under 28 U.S.C. § 2106 to 'require such further proceedings to be had as may be just under the circumstances' by retaining jurisdiction over this appeal pending further findings and conclusions by the district court on the ... record").

**16.** *Cf.* 28 U.S.C. § 2201 (Declaratory Judgments Act); *Nagler v. Derwinski*, 1 Vet.App. 297, 306 (1991) (term "court of the United States" in 28 U.S.C. § 2201 is defined in 28 U.S.C. § 451 as including only "the Supreme Court of the United States, courts of appeals, district courts ...[, and] the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good

behavior"; thus, the Declaratory Judgments Act does not apply to this Court because its judges are appointed "by the President ... for a term of 15 years").

**17.** *See* 38 U.S.C. §§ 7252(a) (authority to "affirm, modify, or reverse" BVA decisions), 7261(a)(1) ("decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions"), 7261(a)(3) ("hold unlawful and set aside ... conclusions, rules, and regulations" of the Secretary and BVA Chairman), 7264(a) (prescribe rules of practice and procedure), 7265(a), (b) (punish contempt by fine or imprisonment and have such assistance in "carrying out ... its lawful writ, process, order, rule, decree or command as is available to a court of the United States").

**18.** *See* 38 U.S.C. §§ 7252(a), (b), 7263(c), 7266.

**19.** *See Gardner v. Derwinski*, 1 Vet.App. 584, 587–88 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* — U.S. —, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (where "a statute's language is *plain,* and its meaning *clear,* no room exists for construction") (emphasis added). *See infra* note 20.

Section 2106 refers to appellate court jurisdiction over "any judgment, decree, or order of a *court*". 28 U.S.C. § 2106 (emphasis added). It is not clear whether the term "court" was intended to include administrative tribunals that carry out adjudicatory functions. However, federal caselaw under section 2106 strongly suggests that the second reference to "court" in that section refers to any adjudicative entity whose decision is being reviewed by an appellate judicial tribunal.[20] This conclusion follows from the actions of other federal appellate courts in citing section 2106 as authority for retaining jurisdiction over remands to administrative agencies.[21] For example, in applying section 2106 to its review of an agency action, the U.S. Court of Appeals for the District of Columbia Circuit expressly noted the following rationale for such application: "While § 2106 applies in terms only to review of a court order, its basic principle is not inapposite to appellate review of agency orders." [22] It seems significant that the Secretary, although contending that section 2106 is not available to be used by an Article I court, does not argue that it may not be used as to a remand to an administrative adjudicatory body.

*3. Inherent authority.* It is also clear in federal caselaw that Article III courts have inherent power to manage their caseloads.[23] The Secretary concedes that Article I courts also have "implied powers" which are governed "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases". Br. at 19–20 (quoting *Chambers v. NASCO*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). The federal courts of appeals have indeed held that *non*-Article III, specialized United States courts have inherent powers. For example, the U.S. Court of Appeals for the Ninth Circuit has held that "questions of Tax Court [an Article I court] jurisdiction are to be resolved in the same manner as for an Article III court" despite the fact that "Congress has granted the Tax Court very narrow, limited jurisdiction." [24] The Fifth and Fourth Circuits have both held that bankruptcy courts have inherent powers.[25] This

20. We have no reason to decide whether the first reference to "court" in section 2106 is similarly broad because this Court is, without doubt, included within the most clearcut meaning of the first use of "court".

21. *E.g., Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 853 F.2d 888, 890 n. 2 (Fed.Cir. 1988) (citing section 2106 in reversal and remand to U.S. Patent and Trademark Office Trademark Trial and Appeal Board); *Rosales–Caballero v. INS*, 472 F.2d 1158, 1160 (5th Cir. 1973) (citing section 2106 in remand to INS); *Laclede Gas Co. v. NLRB*, 421 F.2d 610, 617 (8th Cir.1970) (citing section 2106 and 29 U.S.C. § 160(e) in remand to NLRB); *Loshbough v. Allen*, 373 F.2d 747, 752 (C.C.P.A.1967) (citing section 2106 in remand to Patent Office Board of Patent Interferences); *Application of Fischer*, 360 F.2d 230, 232 (C.C.P.A.1966) (citing section 2106 in remand to Patent Office Board of Appeals); *Application of Herrick*, 344 F.2d 713, 716 (C.C.P.A.1965) (same).

22. *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 277 (D.C.Cir.1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

23. *E.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). This power should be "exercised with great caution", *Ex Parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824), but extends to the "power to impose silence, respect, and decorum . . . and submission to [a court's] lawful mandates", *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991), the Supreme Court held that a federal court could "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct" not reached by FRCP Rule 11; *cf. Kokkonen v. Guardian Life Ins. Co.*, —— U.S. ——, ————, 114 S.Ct. 1673, 1676–77, 128 L.Ed.2d 391, 397–98 (1994) (federal court that dismissed diversity case with prejudice and did not retain jurisdiction or refer to terms of settlement did not have inherent authority to enforce terms of settlement agreement).

24. *Clapp v. Commissioner*, 875 F.2d 1396, 1399 (9th Cir.1989) (citing *Handeland v. Commissioner*, 519 F.2d 327, 329 (9th Cir.1975), *Anthony v. Commissioner*, 66 T.C. 367, 1976 WL 3628 (1976), and *Roderick v. Commissioner*, 57 T.C. 108, 1971 WL 2572 (1971)).

25. *See Citizens Bank & Trust Company v. Case*, 937 F.2d 1014, 1023 (5th Cir.1991) ("inherent powers possessed by the district court. . . . are equally applicable to the bankruptcy court"); *In*

Court has relied upon its implied powers in several precedential opinions and in its Rules of Admission and Practice.[26] In *Jones (Joseph)*, 1 Vet.App. at 606–07, this Court quoted *Chambers* and cited *Freytag, supra*, and *Citizens Bank & Trust Company v. Case*, 937 F.2d 1014, 1023 (5th Cir.1991), for the proposition that Article I courts have inherent authority "to punish for contempt".[27]

In *Freytag*, the Supreme Court rejected the idea that the judicial power of Article I courts is somehow different from that of Article III courts, and stated: "In both [*American Ins. Co. v. Canter*, 1 Pet. 511, 546, 7 L.Ed. 242 (1828), and *Williams v. United States*, 289 U.S. 553, 565–567, 53 S.Ct. 751, 754–755, 77 L.Ed. 1372 (1933)], this Court rejected arguments similar to the literalistic one now advanced by petitioners, that only Article III courts could exercise the judicial power because the term "judicial Power" appears only in Article III." *Freytag*, 501 U.S. at 889, 111 S.Ct. at 2644. As to retaining jurisdiction, federal courts have held that they have inherent power to retain jurisdiction over cases remanded to a lower tribunal.[28] Indeed, it is arguable that 28 U.S.C. § 2106 is a codification of the inherent power of federal courts to retain jurisdiction. *Cf.*

*Patton v. HHS*, 25 F.3d 1021, 1027 (Fed.Cir. 1994) (FRCP 60(a) "expressly recognized 'a power that the courts always have had' ").

The Secretary argues, however, that retaining jurisdiction over a remanded case does not "fit into the kinds of actions that the Supreme Court has applied to [a court's] inherent authority" (Br. at 20). He cites *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), for the proposition that separation-of-powers concerns restrict the jurisdiction of Article I courts. Br. at 14. *Northern Pipeline* held that the Bankruptcy Act of 1978 was unconstitutional because it allowed bankruptcy courts to adjudicate state-law claims "not of Congress' creation". *Northern Pipeline*, 458 U.S. at 84, 102 S.Ct. at 2878. However, the Supreme Court made it clear that "when Congress creates a statutory right", "it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right" even though such provisions "do, in a sense, affect the exercise of judicial power", because they are "incidental to Congress' power to define

the conduct of persons who are admitted to practice before it").

27. Merely because Article I courts are courts of limited jurisdiction does not mean that they cannot have inherent powers. The Article III United States courts of appeals and district courts, which unquestionably do have inherent powers, are also courts of limited jurisdiction that owe their creation to Congress. *See Chambers*, 501 U.S. at 47, 111 S.Ct. at 2134 ("It is true that the exercise of the inherent power of lower federal courts can be limited by statute and rule, for '[t]hese courts were created by act of Congress' ") (citing *Ex parte Robinson*, 19 Wall. 505, 510–11, 22 L.Ed. 205 (1874)).

28. *United States v. Williams*, 951 F.2d 1287, 1291 (D.C.Cir.1991) (court, citing both inherent power and 28 U.S.C. § 2106, retained jurisdiction and remanded for "factual findings required by Rule 12(e) [of the Federal Rules of Criminal Procedure] as well as a statement by the district court of the conclusions of law it has reached on those findings"); *Gulliver v. Dalsheim*, 739 F.2d 104, 106 (2d Cir.1984) (jurisdiction was retained in earlier proceeding, 687 F.2d 655, 659 (2d Cir.1982), without citation to 28 U.S.C. § 2106, "for the 'purpose of facilitating immediate review of further trial court proceedings' ").

*re Walters*, 868 F.2d 665, 669 (4th Cir.1989) (bankruptcy courts have contempt power under 11 U.S.C. § 105(a)); *cf. In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281, 1284 (9th Cir.1987) (bankruptcy courts do not have "inherent contempt power" because, as adjuncts to federal district courts, they "can enforce compliance with their orders by resorting to article III courts").

26. *See Dacoron v. Brown*, 4 Vet.App. 115, 119 (1993) (citing *Freytag v. Commissioner*, 501 U.S. 868, 889, 111 S.Ct. 2631, 2644, 115 L.Ed.2d 764 (1991), for the proposition that "authority [to review claims pertaining to the constitutionality of statutory and regulatory provisions] is inherent in the Court's status as a court of law"); *Ebert v. Brown*, 4 Vet.App. 434, 437 (1993) (citing *Jones (Joseph) v. Derwinski*, 1 Vet.App. 596, 606 (1991), for the proposition that "the Court has the power to sanction those who abuse the judicial process under the 'inherent power of the federal courts' "); *Pritchett v. Derwinski*, 2 Vet. App. 116, 120 (1992) (citing *Nixon v. Warner Communications*, 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978), for the proposition that the Court has "inherent 'supervisory power over its own records and files' "); Misc. Ord. No. 3–92 (June 25, 1992) (the Court has "inherent powers and responsibility to supervise

the right that it has created." *Id.* at 83, 102 S.Ct. at 2878. *Northern Pipeline* is thus inapposite to the instant case because the Secretary is not arguing that the Veterans' Judicial Review Act (VJRA),[29] which created this Court, is not a constitutional exercise of Congress' power to define rights to VA benefits that it has created. Nor did the Supreme Court, in its sole opinion in a case originating in this Court, even remotely suggest any constitutional infirmity in the VJRA or the status of this Court. *See Brown v. Gardner,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).

### D. Postremand Fees

*1. Under situation where Court properly retained jurisdiction.* In view of the analysis and conclusion in part II.C., above, the Court should hold that it has authority to retain jurisdiction over a case remanded to the BVA and that the ensuing administrative agency proceedings on remand are part of a single "civil action" for EAJA purposes. Because, in view of that analysis and conclusion, the "civil action" in the instant case continued until the postremand entry of judgment, I do not believe the Court has discretion under *Hudson* and *Schaefer,* both *supra,* to deny EAJA fees for postremand representation before the BVA.

The Supreme Court in *Schaefer* clearly stated that *Hudson* was still good law in sentence-six (retention-of-jurisdiction) cases in the SSA context, and FCAA legislative history and the Federal Circuit's analysis in *Jones (McArthur), supra,* have indicated that the principles of *Hudson* should be fully applicable to this Court (*see* part II.B.1., above). Although it seems clear that not all of *Hudson* remains operative,[30] the Supreme Court stated expressly in *Schaefer* that the part of *Hudson* that applies to cases where jurisdiction is retained does remain in effect.

Those *Hudson* principles provide for postremand fees where jurisdiction has been retained.

The Supreme Court in *Hudson* stated that "we find it difficult to ascribe to Congress an intent to throw the Social Security claimant a lifeline that it knew was a foot short" because "the incentive which such a system would create for attorneys to abandon claimants after judicial remand runs directly counter to long established ethical canons of the legal profession." *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257. Similarly, in view of the Congress' express application of EAJA to this Court and the express legislative intention that the principles of *Hudson* were to apply fully to EAJA proceedings in this Court, it is difficult to ascribe to Congress an intent to throw VA claimants a foot-short lifeline by creating an incentive for attorneys to abandon them after they obtain a remand from this Court for BVA readjudication. Furthermore, the legislative history of the VJRA indicates that when Congress enacted a provision to allow attorneys to collect private fees for representing VA claimants before this Court, it contemplated the need for attorney representation before the Board after it had made a post-VJRA decision on the claim in question.[31]

A fair reading of the principles of *Hudson,* applied to EAJA applications before this Court as instructed by legislative history and the Federal Circuit in *Jones (McArthur),* 41 F.3d at 637, leads to the conclusion that postremand EAJA fees are awardable in this Court when jurisdiction has been retained and judgment is entered following the BVA decision on remand. Only the Supreme Court or Congress, not this Court, may provide for a contrary result.

*2. Under situation where jurisdiction was improperly retained.* The majority

---

**29.** Pub.L. No. 100–687, Div. A., § 301(a), 102 Stat. 4105, 4113 (1988).

**30.** *Shalala v. Schaefer,* 509 U.S. 292, ——, 113 S.Ct. 2625, 2633, 125 L.Ed.2d 239 (1993) (Stevens, J., dissenting).

**31.** In reference to the section of the VJRA now codified at 38 U.S.C. § 5904(c)(1), which permits attorneys to charge and be paid attorney fees for

services performed on or after the date the BVA "first makes a final decision in the case", the legislative history indicates that attorney services were contemplated for post-BVA decision adjudication at the BVA or regional office, such as on BVA reconsideration, reopening, and remand. *See* 134 CONG.REC. 31461–62, 31469 (1988) (statements of Sen. Cranston); 135 CONG.REC. 31770 (1988) (statement of Rep. Montgomery).

holds that the remand in the instant case was analogous to an SSA sentence-four remand, that jurisdiction was not in fact retained, and that the "civil action" ended upon remand. The majority cites *Schaefer*, 509 U.S. at —— n. 6, 113 S.Ct. at 2632 n. 6, as support for this conclusion. *Ante* at 308. However, even if one assumes that jurisdiction was improperly retained in the instant case (an assumption I do not share), a proper analysis of *Schaefer* leads to the opposite conclusion from that reached by the majority. *Schaefer* held that where a district court erroneously did not enter judgment and improperly retained jurisdiction in an SSA section 405(g) sentence-four remand, the EAJA clock did not start running until a formal judgment was entered and became final and appealable. *Schaefer* did **not** hold that the civil action ends upon remand in a sentence-four case where jurisdiction was improperly retained and not challenged.

> As the Supreme Court stated in *Schaefer*:
> Schaefer argues that, even if the District Court should have entered judgment in connection with its April 4, 1989[,] order remanding the case to the Secretary, the fact remains that it did not. ·And since no judgment was entered, he contends, the 30–day time period for filing an application for EAJA fees cannot have run. We agree.

*Schaefer*, 509 U.S. at ——, 113 S.Ct. at 2632. This Court expressly recognized this alternative theory in its opinion in *Stillwell*, 6 Vet. App. at 297.[32] Because *Schaefer's* holding was limited to the timeliness of an EAJA application, that case did not deal expressly with the issue of when the "civil action" ends for EAJA purposes in sentence-four remands where jurisdiction was improperly retained and judgment was not entered until after postremand proceedings had been completed.

The Ninth and Seventh Circuits are split on the question whether *Hudson's* definition

of a "civil action" continues to apply after *Schaefer* to sentence-four remands where jurisdiction was improperly retained. The U.S. Court of Appeals for the Ninth Circuit held in *Flores, supra*, that when a district court improperly retains jurisdiction over a sentence-four remand and does not enter judgment until after the remand adjudication, the EAJA civil action does not end until the postremand entry of judgment. *Flores*, 49 F.3d at 571–72. In *McDonald v. Washington*, 15 F.3d 1126, 1129 (D.C.Cir.1994), the District of Columbia Circuit held in a post-*Schaefer* case that postremand proceedings in a habeas corpus action constituted part of one "civil action" for EAJA purposes where "the district court retained jurisdiction and there is no claim that the retention was error". In contrast, the U.S. Court of Appeals for the Seventh Circuit, in *Curtis, supra*, held, after *Schaefer*, that where a district court had failed to enter judgment in a sentence-four remand, the civil action for EAJA purposes ended at the time the case was remanded, even though no FRCP Rule 58 judgment had been entered at that point.[33] The Ninth Circuit, however, has noted that *Curtis* "is thus inconsistent with *Schaefer*" because *Curtis* would prohibit postremand fees in all sentence-four cases, even where the district court had improperly, but without objection, retained jurisdiction. *Flores v. Shalala*, 49 F.3d at 572 n. 14 (9th Cir.1995) (order amending *Flores, supra*, to add a footnote criticizing *Curtis*).

The reasoning of the Ninth and District of Columbia Circuits seems by far the more consistent with *Schaefer*. First, the Supreme Court in *Schaefer* affirmed a district court decision that had awarded EAJA fees where jurisdiction had been improperly retained over a sentence-four remand. *Schaefer*, 509 U.S. at ——, 113 S.Ct. at 2632. Second, it seems extremely unlikely that the Supreme Court, given its strict reading of

---

**32.** *See Flores*, 49 F.3d at 571–72 (when district court improperly retains jurisdiction over 42 U.S.C. § 405(g) sentence-four remand and does not enter judgment until after remand adjudication, EAJA civil action does not end until postremand entry of judgment); *Kolman v. Shalala*, 39 F.3d 173, 176–77 (7th Cir.1994) (when district court has retained jurisdiction in a case remanded to HHS, even if retention of jurisdiction was

improper under 42 U.S.C. § 405(g), appeal period does not expire until district court enters postremand FRCP Rule 58 judgment and appeal period runs).

**33.** *Accord Raines v. Shalala*, 44 F.3d 1355, 1363 (7th Cir.1995).

FRCP Rule 58 in *Indrelunas,* 411 U.S. at 221, 93 S.Ct. at 1564, as modified only very narrowly in *Bankers Trust,* 435 U.S. at 387–88, 98 S.Ct. at 1121, would agree with the Seventh Circuit's rather cavalier treatment of a lack of a Rule 58 judgment. *See* part I., above; *see also Schaefer,* 509 U.S. at —— n. 6, 113 S.Ct. at 2632 n. 6 (Court held that failure to enter Rule 58 judgment upon remand in sentence-four case was "error"). Third, the language of *Schaefer* strongly indicates that *Hudson's* holding, including its definition of "civil action", remains good law except as to "sentence-four remands that are ordered (as they should be) without retention of jurisdiction, or that are ordered with retention of jurisdiction that is challenged." *Schaefer,* 509 U.S. at —— – ——, 113 S.Ct. at 2630–31.

The appellant argues that even if the Court's retention of jurisdiction in the instant case was improper, he may still recover EAJA fees and expenses pursuant to the holdings in *Hudson* and *Schaefer,* both *supra.* For the reasons stated in Part II.C., above, I believe the retention of jurisdiction was proper. However, even if the Court had not had the power to retain jurisdiction, the appellant would nevertheless be entitled to postremand fees under *Schaefer, supra.* Judgment was never entered until postremand proceedings were completed, both parties acted as though jurisdiction had been retained, and retention of jurisdiction was not challenged at the time the Court issued its November 1992 decision.[34] Accordingly, the appellant is correct that even if jurisdiction had been improperly retained, he is entitled to postremand fees under *Schaefer, supra.*

*3. Court's exercise of discretion to deny postremand fees:* Even though the Secretary's position was not substantially justified, there is some language in the *Hudson* opinion that could be read as suggesting that a court might have discretion to deny EAJA fees if the court does not conclude "that representation on remand was necessary to the effectuation of its mandate and to the

ultimate vindication of the claimant's rights, and that an award of fees for work performed in the administrative proceedings is therefore proper." *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257. The Supreme Court cited, as authority for the preceding quotation, *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986), which held that attorney fees were authorized for representation in an administrative proceeding following a remand by a district court pursuant to a consent decree under the Clean Air Act, 42 U.S.C. § 7410. *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257. In *Delaware Valley,* the Supreme Court agreed with the district court that the postremand administrative proceedings were "crucial to the vindication of Delaware Valley's rights under the consent decree". *Delaware Valley, supra.* The Supreme Court relied, as it did in *Hudson,* on *Webb v. Board of Educ. of Dyer County,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985), which found that reasonable attorney time included representation in "optional administrative proceedings" if the attorney work was "useful and of a type ordinarily necessary" to secure the final result. *Delaware Valley, supra.*

Given this background and Congress' contemplation in enacting the VJRA of attorney representation once an initial final BVA decision had been rendered[35] and in enacting the FCAA that EAJA fees could be available in this Court for postremand representation,[36] it cannot reasonably be said that the attorney representation on remand in the instant case was not "useful and of a type ordinarily necessary" to obtain the earlier effective date awarded on remand by the same RO which had denied that relief when the appellant was apparently *un* represented by an attorney before it.

The Court would clearly have discretion to deny fees for some or all of the fees sought by the appellant for postremand representation if the Court were to find that the representation in those proceedings secured "only

---

34. *See* discussion of *Bankers Trust* in part I., above.

35. *See supra* note 31.

36. *See supra* note 13 and discussion in part II. B.1., above.

partial or limited success" under *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). According to the terms of the Court's November 24, 1992, decision, the matter was remanded "for prompt assignment of a 70% rating for PTSD [post-traumatic stress disorder]". *Cleary*, 3 Vet.App. at 499. The assignment of such a rating required the Board or regional office (RO) to establish an effective date for that rating for which the veteran had applied in early 1989. *Id.* at 496. *See West (Walter) v. Brown*, 7 Vet.App. 329, 332 (1995) (en banc) ("A successful claimant has not had his case fully adjudicated until there is a decision as to all essential elements, i.e., status, disability, service connection, rating, *and when in question, effective date* " (emphasis added)). Unknown to the Court at that point, the RO had already awarded a 100% schedular rating for the veteran's PTSD effective November 21, 1991. EAJA Application at 2. Because the date of the claim appealed to this Court was December 1989, almost two years earlier than the effective date awarded by the RO, the effective date for a PTSD increase over the 50% rating in effect when the veteran had brought this appeal was still very much at issue in the postremand adjudication. *Ibid.*[37]

On remand, the appellant did receive an award of an earlier effective date. Given the appellant's success on the remanded issue, and given that no other basis exists for finding that the 21.5 attorney hours expended before the Board were not "reasonable", the Court should hold that the hours requested in the instant case for postremand representation before the Board were reasonable and thus include those fees and all "fees for fees" (*see* part II.D.4., below) in the award.

*4. "Fees for fees".* The Secretary does not contest "fees for fees" in his response. In his reply, the appellant requests "fees for fees" in the amount of $4,677.75 for 38.5 hours of work at $121.50 per hour. The appellant also stated that "additional sums for 'fees for fees' " will be submitted "at the completion of these proceedings". Br. at 10. This Court established in *Cook v. Brown*, 6 Vet.App. 226 (1994), that reasonable fees for fees are awardable as part of an EAJA award for the entire civil action. *Id.* at 240–41 (relying on *Commissioner, INS v. Jean*, 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990)). Because the appellant has been successful in obtaining an EAJA award for his representation on the merits of his appeal in connection with the civil action in this Court, he is eligible to recover reasonable fees for representation in the EAJA-application adjudication. He should thus be awarded fees for the full 38.5 hours already included in the application and for reasonable hours expended in the remainder of the fee litigation, for which an amendment to the application would be in order. *See Jean, supra.*

### III. Conclusion

I must admit that awarding EAJA fees for postremand representation in cases where

---

**37.** Judge Ivers admits in his concurring opinion that the September 1992 award of a 100% service-connected schedular rating for PTSD was part of a "separate claim" from the one that was before this Court, but nevertheless concludes that this case became moot when the appellant received the RO award while the case was here on appeal. *Ante* at 310–11. It is difficult to understand how a determination on a "separate claim" could moot the claim before this Court. Judge Ivers also concludes, without supporting citation or analysis, that the appellant's counsel bore "the lion's share of the responsibility for keeping the Court and VA advised under the facts in this case" as to the September 1992 RO award. I fail to see how the appellant's counsel is responsible for advising *the Secretary* what his own agents have done. I also fail to see how the Secretary and his counsel are somehow less responsible than the appellant for keeping the Court properly advised about adjudication actions by their own

Department that may have a bearing on a pending appeal. *See MacWhorter v. Derwinski*, 2 Vet. App. 655, 657 (1992) (Secretary's counsel has "a duty, as an officer of this Court, to weigh and consider carefully the propriety of the response to be given the Court"); *MacWhorter v. Derwinski*, 2 Vet.App. 133, 135 (1992) ("counsel has an ethical obligation to correctly advise the Court of the facts and the law"); *cf. Jones (Joseph) v. Derwinski*, 1 Vet.App. 596, 606 (1991) ("Court must be able to rely on the representations of those who practice before it"). Although I agree that counsel for both parties fell short of carrying out their responsibilities to keep the Court fully informed of a matter that might have a bearing on a pending appeal, I find no justification for the suggestion that the appellant's public-interest counsel may have had "unclean hands" in the manner in which representation of the appellant was conducted. *Ante* at 311.

jurisdiction has been retained, but not in cases where jurisdiction has not been retained, appears to be an anomalous result. As the U.S. Court of Appeals for the Seventh Circuit has stated, there is "considerable merit" in "Justice Stevens's concurring opinion in *Schaefer* argu[ing] that allowing a litigant to recoup postremand fees in a sentence-six case but not in a sentence-four case is contrary to the basic purpose of the EAJA." *Curtis,* 12 F.3d at 101 n. 5 (citing *Schaefer,* 509 U.S. at —— – ——, 113 S.Ct. at 2633–36). However, "courts are bound to follow the statutory mandate.... [I]f any change is to be made, it is up to Congress alone to do so." *Curtis, supra.*

Accordingly, under current law and its legislative history, binding Supreme Court authority, and the persuasive authority of the post-*Schaefer* federal caselaw, I would hold as follows: (1) The Court retained general jurisdiction over the appeal until November 2, 1993; (2) the Court had the power to so retain jurisdiction; (3) EAJA fees are awardable for postremand representation before the BVA and/or RO where the Court's remand decision retained general jurisdiction over the appeal; (4) even if the Court did not have authority to retain jurisdiction over this appeal, it purported to do so and thus under *Schaefer* and *Stillwell,* both *supra,* fees are awardable for the postremand representation just as though the Court had properly retained jurisdiction (in the absence of the Court's retention of jurisdiction having been challenged when it was done); and (5) the Court has no discretion to deny or reduce the postremand fees applied for in this case.

For the foregoing reasons, I respectfully dissent.